**CANDIS MITCHELL**
California Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Candis_Mitchell@fd.org

Attorneys for Mr. Mohamed Miloudi

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08CR1197-LAB |
| Plaintiff, ) | DATE: MAY 27, 2008 |
|  ) | TIME: 2:00 P.M. |
| v. ) |  |
| **MOHAMED MILOUDI**, ) | STATEMENT OF FACTS AND |
|  ) | MEMORANDUM OF POINTS AND |
| Defendant. ) | AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS**[1]

**A.**   **Events Prior to the Arrest**

It is alleged by the government that on September 14, 2005, Mr. Miloudi knowingly filed an I-687 (Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act) under the name of "Emilio Sanchez-Rivera" with the U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services. On the same date, he also applied for temporary residency under INA § 245A under the same name. After that, on October 31, 2005, he received an alien employment

---

1. The following is based primarily upon information supplied through Government discovery. Mr. Miloudi does not stipulate to its accuracy and reserves the right to challenge it at future proceedings.

1  authorization document numbered 093-455-872 in the name of Emilio Sanchez-Rivera. On November 18,
2  2005, the government alleges that Mr. Miloudi was paroled into the United States under the name Emilio
3  Sanchez-Rivera at the San Ysidro Port of Entry.

4  It is further alleged that on February 7, 2007, the Identity and Benefit Fraud Group in San Diego
5  received information from a Senior City Attorney Investigator regarding Mr. Miloudi's involvement in
6  identity theft and medical benefits fraud. The City Attorney Investigator stated that Mr. Miloudi was a
7  Moroccan nation, a resident in France with a criminal record, and affiliated with a terrorist organization.
8  The information from the Senior City Attorney Investigator further alleges that Mr. Miloudi purchased a
9  Mexican birth certificate in Puebla, Mexico, issued to Emilio Sanchez-Rivera and changed his identity to
10 defraud Scripps Memorial Hospital for medical bills.

11 On March 2, 2007, the government alleges Mr. Miloudi received a Notice of Decision from the US
12 Department of Homeland Security, Bureau of Citizenship and Immigration Services stating that his
13 application for temporary residency had been denied. Following the denial, Mr. Miloudi's employment
14 authorization card expired on January 5, 2008.

15 **B.    <u>Arrest and Interrogation</u>**

16 On January 9, 2008, Immigration and Customs Agents went to Mr. Miloudi's residence in San Diego
17 -- ostensibly to determine his true identity. At 6:30 a.m., agents went to Mr. Miloudi's house to request
18 documentation and speak with him regarding his immigration status. After receiving the documents, Mr.
19 Miloudi was transported to San Diego for further processing. It is unclear from the documents provided
20 whether Mr. Miloudi was transported then interrogated or interrogated in his home, but the discovery
21 indicated that at approximately 7:15 a.m., Mr. Miloudi was questioned as to his mother's name and
22 nationality. Mr. Miloudi requested to speak with counsel. The agents continued to question Mr. Miloudi
23 stating that the information was merely biographical, but he maintained his request for counsel prior to
24 further questioning. Following his second request, the agents continued to question Mr. Miloudi regarding
25 prior convictions. Mr. Miloudi informed the agents that he had been arrested twice for driving under the
26 influence. It is unclear if further questioning occurred and to what extent questioning occurred following
27 Mr. Miloudi's statement regarding prior arrests.

28

### C. Immigration Proceedings

Criminal proceedings were not instigated against Mr. Miloudi, rather he was held in immigration custody pending deportation. He was charged with fraudulent procurement of immigration document, possession of an invalid border crossing card, and being unlawfully present in the United States for more than one year. During the proceeding, the government admitted as evidence two California Driver's Licenses, one bearing the name of Emilio Sanchez Rivera and the other with Mohamed Miloudi. Further, one of the agent's present at the arrest of Mr. Miloudi, ICE Agent Robert Burgess, testified before the immigration court regarding information he found during the course of his investigation. It is also alleged that during the proceedings, Mr. Miloudi stated that his true name was Mohamed Miloudi rather than Emilio Sanchez Rivera. On March 10, 2008, the Immigration Judge ordered that he be removed to France.

### D. Criminal Proceedings and Indictment

While awaiting travel documents to France in immigration custody, Mr. Miloudi was arrested and transported into federal custody on approximately April 2, 2008. At his initial appearance on April 7, 2008, a complaint was filed alleging a violation of 18 U.S.C. § 1546 (b), Possession of Document Obtained by Fraud. On April 16, 2008, an indictment was obtained charging Mr. Miloudi with a violation of 18 U.S.C. § 1546 (b), Fraud and Misuse of Employment Document, and 18 U.S.C. § 1028A, Aggravated Identity Theft.

These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Miloudi moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

To date, defense counsel has received limited discovery and has been informed by the government that additional discovery is to be expected. Mr. Miloudi respectfully requests that the government be ordered to produce discovery because Mr. Miloudi knows that he has not received all the discoverable material in

his case. Mr. Miloudi specifically requests the documents memorializing any proceedings or documentation that the Government intends to rely upon at trial.

In addition, Mr. Miloudi moves for the production of the following discovery:

1. **Mr. Miloudi's Statements.**  The Government must disclose to Mr. Miloudi all copies of any written or recorded statements made by Mr. Miloudi; the substance of any statements made by Mr. Miloudi which the Government intends to offer in evidence at trial; any response by Mr. Miloudi to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of Mr. Miloudi's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to Mr. Miloudi; as well as any other statements attributed to Mr. Miloudi. FED. R. CRIM. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all Mr. Miloudi's statements, whether written or oral, regardless of whether the Government intends to make any use of those statements. **Mr. Miloudi specifically requests all audio and videotaped copies of his statements and any rough notes taken pertaining to the substance of his statements. He further requests audio copies of the proceedings before the immigration court**.

2. **Arrest Reports, Notes and Dispatch Tapes.**  Mr. Miloudi also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Miloudi or any other discoverable material is contained. Such material is discoverable under FED. R. CRIM. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Miloudi. See FED. R. CRIM. P. 16(a)(1)(B) and (c), FED. R. CRIM. P. 26.2 and 12(i).

3. **Brady Material**. Mr. Miloudi requests all documents, statements, agents' reports, and tangible evidence favorable to Mr. Miloudi on the issue of guilt and/or which affects the credibility of the Government's witnesses and the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S.

667 (1985); United States v. Agurs, 427 U.S. 97 (1976). **Specifically, Mr. Miloudi requests any statements made by Immigration and Customs Enforcement Agent Robert Burgess made at the immigration proceedings of Mr. Miloudi**

    4. **Any Information That May Result in a Lower Sentence Under The Guidelines.** Notwithstanding the advisory nature of the sentencing guidelines, the Government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963), because it is exculpatory and/or mitigating evidence relevant to a possible future determination with respect to sentencing.

    5. **Mr. Miloudi's Prior Record.** Mr. Miloudi requests disclosure of his prior record. FED. R. CRIM. P. 16(a)(1)(B).

    6. **Any Proposed 404(b) Evidence.** To the extent that there is any such evidence, the Government must produce evidence of prior similar acts under FED. R. CRIM. P. 16(a)(1)(c) and FED. R. EVID. 404(b) and "shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the Government proposes to introduce under FED. R. EVID. 404(b) at trial. See United States v. Vega, 188 F.3d 1150 (9th Cir. 1999). **Mr. Miloudi requests notice at least three weeks in advance of trial.**

    7. **Evidence Seized.** Mr. Miloudi requests production of evidence seized as a result of any search, either warrantless or with a warrant. FED. R. CRIM. P. 16(a)(1)(c). **Mr. Miloudi specifically requests clear color copies of the identification cards on pages 178, 180, 186, 188, and 190 of discovery.**

    8. **Request for Preservation of Evidence.** Mr. Miloudi specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Miloudi's personal effects, and any evidence seized from Mr. Miloudi or any third party.

    9. **Henthorn Material.** Mr. Miloudi requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 419 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir.

1991); <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate Government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996) (accord).

10. **Tangible Objects.** Mr. Miloudi requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the Government's case-in-chief, or were obtained from or belong to Mr. Miloudi. FED. R. CRIM. P. 16(a)(1)(c).

11. **Expert Witnesses.** Mr. Miloudi requests the name, qualifications, and a written summary of the testimony of any person that the Government intends to call as an expert witness during its case in chief. FED. R. CRIM. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. <u>See</u> <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. **Evidence of Bias or Motive to Lie.** Mr. Miloudi requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Miloudi, or has a motive to falsify or distort his or her testimony.

13. **Impeachment Evidence.** Mr. Miloudi requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Miloudi. <u>See</u> FED. R. EVID. 608, 609 and 613; <u>Brady v. Maryland</u>.

14. **Evidence of Criminal Investigation of Any Government Witness.** Mr. Miloudi requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

///

1    15. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.** Mr. Miloudi requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

16. **Witness Addresses.** Mr. Miloudi requests the name and last known address of each prospective Government witness. Mr. Miloudi also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

17. **Name of Witnesses Favorable to Mr. Miloudi.** Mr. Miloudi requests the name of any witness who made an arguably favorable statement concerning Mr. Miloudi or who could not identify him or who was unsure of his identity, or participation in the crime charged.

18. **Statements Relevant to the Defense.** Mr. Miloudi requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

19. **Jencks Act Material.** Mr. Miloudi requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Miloudi to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

20. **Giglio Information & Agreements Between the Government and Witnesses.** Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Miloudi requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

/ / /

21. **Agreements Between the Government and Witnesses.** Mr. Miloudi requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

22. **Informants and Cooperating Witnesses.** Mr. Miloudi requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Miloudi. The Government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Miloudi. Brady v. Maryland, 373 U.S. 83 (1963)

23. **Bias by Informants or Cooperating Witnesses.** Mr. Miloudi requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information includes, but is not limited to, any inducements, favors, payments or threats that were made to the witness in order to secure cooperation with the authorities.

24. **Scientific and Other Information.** Mr. Miloudi requests the results of any scientific or other tests or examinations conducted by any Government agency or their subcontractors in connection with this case. See Rule 16(a)(1)(D).

25. **Residual Request.** Mr. Miloudi intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution

08CR1197-LAB

and laws of the United States. Mr. Miloudi requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.

### MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Communications between defense counsel and government counsel indicated that additional discovery will be forthcoming. As more information comes to light -- due to the government providing additional discovery in response to these motions, the unique facts and circumstances of this case, or an order of this Court -- the defense will be filing further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

### IV.

### CONCLUSION

For the foregoing reasons, Mr. Miloudi respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: May 2, 2008

*s/ Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Miloudi
Candis_Mitchell@fd.org