KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-2757
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1197-LAB |
| | ) | |
| Plaintiff, | ) | **RESPONSE AND OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTIONS:** |
| v. | ) | |
| | ) | **(1) TO COMPEL DISCOVERY** |
| | ) | **(2) TO FILE FURTHER MOTIONS** |
| MOHAMED MILOUDI, | ) | |
| a.k.a. EMILIO SANCHEZ-RIVERA, | ) | |
| | ) | Date:   May 27, 2008 |
| Defendant. | ) | Time:   2:00 p.m. |
| | ) | Court:  The Hon. Larry A. Burns |
| | ) | |
| _____ | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and File Further Motions.  This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

//

/ /

/ /

**I**

**STATEMENT OF FACTS**

**A.      Events Prior to Defendant's Arrest**

On September 6, 2005, Mohamed Miloudi ("Defendant") applied for Status as a Temporary Resident using Form I-687 under the alias Emilio Sanchez-Rivera. One of the identification documents he submitted as part of his application was a Mexican passport issued on July 11, 2003. Pursuant to his application, Defendant was issued an Employment Authorization Card ("EAD") permitting him to work in the United States pending a determination on his temporary resident application. His original EAD card was valid from October 31, 2005 through October 20, 2006. His EAD was reissued on January 6, 2007 and expired January 5, 2008. He also received a social security card "Valid For Work Only With DHS Authorization." During that time, Defendant applied for employment at The French Gourmet on May 16, 2006 and completed a Form W-4 (Employee's Withholding Allowance Certificate) and Form I-9 (Employment Eligibility Verification) using the name Emilio Sanchez-Rivera and the social security card issued under that same name.

On March 2, 2007, approximately one month after his EAD card was reissued, Defendant was notified of the decision to deny his application for Temporary Resident status. One month later, on April 18, 2007, Defendant applied for and received a drivers license in the name of Emilio Sanchez-Rivera with a birth date of January 5, 1979. Defendant had previously applied for a drivers license in the name Mohamed Miloudi, birth date July 21, 1972.

**B.      Defendant's Arrest and Detention Hearing**

On January 8, 2008, three days after Defendant's EAD card under the name Sanchez-Rivera expired, Immigration and Customs Enforcement officials contacted Defendant at his residence at 2231 Garnet Ave., San Diego. Defendant stated that he is Emilio Rivera, and further claimed to be born in Mexico. He admitted that he did not have any documents in his possession allowing him to remain lawfully in the United States. He was placed under arrest and taken into immigration custody.

On March 10, 2008, Defendant had a hearing in front of Immigration Judge Renee L. Renner. In that hearing, Defendant was confronted with two drivers licenses issued to him in two different names (Mohamed Miloudi and Emilio Sanchez-Rivera). Defendant admitted that his true name is Miloudi,

admitted to being a citizen of France, admitted to residing and working in the U.S. since at least 2001 without legal permission, and admitted to applying for a temporary resident status under the name of Emilio Sanchez-Rivera, a citizen of Mexico. Defendant requested and was ordered removed from the United States to France.

## II

## DEFENDANT'S MOTIONS TO COMPEL DISCOVERY

On April 18, 2008, the Government provided Defendant with 202 pages of discovery consisting primarily of documentation from Defendant's A-file. On May 5, 2008, the Government produced an additional 41 pages of discovery, including reports generated by law enforcement regarding Defendant's arrest, reports regarding interviews with various witnesses, employment documents, and DMV documents. The Government also produced an audio tape of Defendant's March 10, 1998 deportation hearing on May 13, 2008.

**(1)      Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date, including his statements to Immigration Officials when he was taken into Immigration custody as well as his statements during his Immigration hearing. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future

evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(2)     Arrest Reports, Notes, and Dispatch Tapes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case.  In addition, the Government has produced numerous other reports related to the investigation into Defendant's case.  The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A) and (B).[1]  The Government has no objection to the preservation of the agents' handwritten notes.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).  However, as explained above, the Government objects to providing Defendant with a copy of the rough notes at this time.  The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment.  If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(3)     Brady Material**

The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment.  The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not

---

[1]     Defendant requests arrest reports and sworn statements pursuant to Rule 16(a)(1)(B) & (c).  Rule 16(a)(1)(C) pertains to organizational defendants, which, to the Government's knowledge, Defendant is not.  The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(A) and (B).

1   requested by the defense. <u>Bagley</u>, 473 U.S. at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976).

2   "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability

3   that, had the evidence been disclosed to the defense, the result of the proceeding would have been

4   different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>).  The final determination

5   of materiality is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles</u>

6   <u>v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

7        <u>Brady</u> does not, however, mandate that the Government open all of its files for discovery.  <u>See</u>

8   <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000) (<u>per curiam</u>).  Under <u>Brady</u>, the United

9   States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see United</u>

10  <u>States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other

11  sources (<u>see United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

12  defendant already possesses (<u>see United States v. Mikaelian</u>, 168 F.3d 380-389-90 (9th Cir. 1999)

13  <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

14  Attorney could not reasonably be imputed to have knowledge or control over.  <u>See United States v.</u>

15  <u>Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001).    <u>Brady</u> does not require the Government "to create

16  exculpatory evidence that does not exist," <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir.

17  1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."

18  <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976).

19  **(4)      Information That May Result in a Lower Sentence Under the Guidelines**

20       The Government will provide Defendant with all <u>Brady</u> material that may result in mitigation

21  of Defendant's sentence.  Nevertheless, the Government is not required to provide information bearing

22  on Defendant's sentence until after Defendant's conviction or guilty plea and prior to her sentencing

23  date.  <u>See United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) (no <u>Brady</u> violation occurs

24  "if the evidence is disclosed to the defendant at a time when the disclosure remains in value").

25  **(5) & (6)      Defendant's Prior Record and Prior Bad Acts**

26       The Government has provided Defendant with a copy of his known prior criminal record and,

27

28

5          Criminal Case No. 08CR1197-LAB

consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D)[2]. <u>See</u> <u>United States v. Audelo-Sanchez</u>, 923 F.2d 129 (9th Cir. 1990).   The Government is attempting to obtain certified copies of documents pertaining to Defendant's criminal record in France. If the Government does obtain any additional documentation pertaining to Defendant's prior convictions or any criminal history in the United States or elsewhere, the Government will provide those to Defendant.

The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).   Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined."  <u>United States v. Soliman</u>, 812 F.2d 277, 279 (9th Cir. 1987).

**(7)    <u>Evidence Seized</u>**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(8)    <u>Request for Preservation of Evidence</u>**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984).  To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Id.</u> at 489; <u>see also</u> <u>Cooper v. Calderon</u>, 255 F.3d 1104, 1113-14 (9th Cir. 2001).  The relevant evidence in this case and the evidence specifically requested by Defendant – including the results of his fingerprint analysis – is documentary in nature and is maintained in his A-file, which is preserved and maintained by the

---

[2]    Defendant requests his prior record pursuant to Rule 16(a)(1)(B).   Rule 16(a)(1)(B) pertains to written or recorded statements, not criminal records. The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(D).

1  Department of Homeland Security in the normal course of business. Any failure to gather and preserve

2  evidence, however, would not violate due process absent bad faith by the Government that results in

3  actual prejudice to the Defendant.  See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per

4  curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d

5  670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

6  **(9)**     **Henthorn**

7  The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and

8  request that all federal agencies involved in the criminal investigation and prosecution review the

9  personnel files of the federal law enforcement inspectors, officers, and special agents whom the

10  Government intends to call at trial and disclose information favorable to the defense that meets the

11  appropriate standard of materiality.  United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing

12  United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992).   If the undersigned Assistant U.S.

13  Attorney is uncertain whether certain incriminating information in the personnel files is "material," the

14  information will be submitted to the Court for an in camera inspection and review.

15  **(10)**     **Tangible Objects**

16  The Government has complied and will continue to comply with Rule 16(a)(1)(E)[3] in allowing

17  Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and

18  tangible objects that are within its possession, custody, or control, and that is either material to the

19  preparation of Defendant's defense, or is intended for use by the Government as evidence during its

20  case-in-chief at trial, or was obtained from or belongs to Defendant.  The Government need not,

21  however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th

22  Cir. 1984).

23  **(11)**     **Expert Witness**

24  The Government will comply with Rule 16(a)(1)(G) and provide notice prior to trial of any

25

26

27  _____

28      [3]      Defendant requests his prior record pursuant to Rule 16(a)(1)(c).   Rule 16(a)(1)(C) pertains to organizational defendants, not tangible objects.  The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(E).

expert witnesses that will be called to testify at trial.[4/]

**(12) & (13)      Evidence of Bias or Motive to Lie and Impeachment Evidence**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(14)      Evidence of Criminal Investigation of Any Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(15)      Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(16)      Witness Addresses**

The Government has already provided Defendant with reports which contain the names and telephone numbers of the inspectors, officers and special agents involved in arresting and interviewing Defendant. In its trial memorandum, the Government will provide Defendant with a list of all witnesses

---

[4/]      Defendant requests discovery concerning expert witnesses pursuant to Rule 16(a)(1)(E). Rule 16(a)(1)(E) pertains to documents and objects, not expert witnesses. The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(G).

whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses to Defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(17)  Name of Witnesses Favorable to the Defendant**

The Government is not aware of the names of any witnesses favorable to the Defendant's case, other than those individuals that supported him at his immigration hearing, whose names already been disclosed.  If the Government discovers any additional witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(18)  Statements Relevant to the Defense**

The Government will provide all statements relevant to Defendant as required by Rule 16, Brady, and Jencks.   The Government is not all possible information and evidence regarding any speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(19)  Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure.  The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b).  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially

verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e).   If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  There is no applicable Jencks material at this time.  If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act relevant to the testifying witness(es).

**(20) & (21)    Giglio Information**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio.  See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).   The Government is not aware of any Giglio information related to this case.  If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(22)    Informants and Cooperating Witnesses**

At this time, the United States is unaware of any informants or cooperating witnesses related to this case.  If the United States determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection.  See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

**(23)    Bias of Informants and Cooperating Witnesses**

As described elsewhere, the recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. Such evidence, if it exists, will be disclosed prior to trial.

**(24)    Scientific and Other Information**

At this time, the Government is unaware of any scientific tests or experiments.  If such tests are conducted in the future, the results will be disclosed to Defendant in advance of trial in accordance with

1    Rule 16(a)(1)(F).[5/]

2                                            **III**

3            **DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

4            The Government does not object to the granting of leave to file further motions as long as the

5    further motions are based on newly discovered evidence or discovery provided by the Government

6    subsequent to the instant motion at issue.

7                                            **IV**

8            **GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

9    **A.    All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

10           Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the

11   Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the

12   Government requests that Defendant permit the Government to inspect, copy and photograph any and

13   all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which

14   are within the possession, custody, or control of Defendant and which Defendant intends to introduce

15   as evidence in his case-in-chief at trial.

16           The Government further requests that it be permitted to inspect and copy or photograph any

17   results or reports of physical or mental examinations and of scientific tests or experiments made in

18   connection with this case, which are in the possession and control of Defendant, which he intends to

19   introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends

20   to call as a witness. The Government also requests that the Court make such order as it deems necessary

21   under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which

22   it is entitled.

23   **B.    Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

24           Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires

25   production of the prior statements of all witnesses, except a statement made by Defendant. The time

26

27   _____

28           [5/]    Defendant requests discovery of scientific information pursuant to Rule 16(a)(1)(D).
     Rule 16(a)(1)(D) pertains to Defendant's prior record. The Government, therefore, interprets this as a
     request pursuant to Rule 16(a)(1)(F).

                                    11              Criminal Case No. 08CR1197-LAB

frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified.  However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**V**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: May 19, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/*Rebecca Kanter*
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

1

2

3                              UNITED STATES DISTRICT COURT

4                            SOUTHERN DISTRICT OF CALIFORNIA

5    UNITED STATES OF AMERICA,            )    Criminal Case No. 08CR1167-LAB
                                          )
6                          Plaintiff,     )
                                          )    CERTIFICATE OF SERVICE
7              v.                          )
                                          )
8    MOHAMED MILOUDI,                     )
                                          )
9                          Defendant.     )
                                          )
10   ─────────────────────────────────    )

11   IT IS HEREBY CERTIFIED THAT:

12
          I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of
13   age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

14        I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND
     OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the
15   District Court using its ECF System, which electronically notifies them.

16        Candis Mitchell, Federal Defenders of San Diego, Inc.

17        I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
     Service, to the following non-ECF participants on this case:
18
          None
19
     the last known address, at which place there is delivery service of mail from the United States
20   Postal Service.

21        I declare under penalty of perjury that the foregoing is true and correct.

22        Executed on May 19, 2008.

23                                             /s/ ***Rebecca Kanter***
                                               REBECCA S. KANTER
24

25

26

27

28